ROBERT G. MORRISON v. WILLARD W. MORSE.

December 27, 1898.

Nos. 11,331—(194).

Promissory Note—Consideration—Mistake in Satisfying Prior Mortgage
—Evidence.

C. purchased of C. G. M. six lots, and gave a purchase-money mort-
gage on the same lots for $5,950, making $979.66 thereof a proportionate
share and specific mortgage lien on lot 9 of said lots. Through mesne
conveyances the defendant M. became the owner of said lot 9, subject to
said lien of $979.66. Subsequently C. reconveyed all of said lots to C. G.
M., except lot 9, in payment of said mortgage, except it was agreed be-
tween them that the mortgage lien of $979.66 on lot 9 should not be in-
cluded in said deed of reconveyance, but that said lot should be subject
to the payment of its proportionate share. C. G. M. then executed a
satisfaction of said mortgage, which, by mistake or oversight, included
lot 9, which satisfaction was recorded. Thereafter C. G. M. represented
to M. that the mortgage and interest on lot 9 had not been paid, and
thereupon M. executed to him a note for the amount of said lien and
interest, and he executed a new satisfaction, releasing lot 9 from said
mortgage lien, each of the parties supposing that said lien had not been
released, and it stood admitted that it had not been paid; and C. dis-
claimed any interest in said lot, or the lien thereon. C. G. M. sold the
new note to the plaintiff, who brought this action to recover the amount
thereof, and M. defended upon the ground of want of consideration.
Held, that the evidence was conclusive that lot 9 became the primary
fund for the payment of the $979.66, and that, as C. did not pay it, plain-
tiff had a mortgage lien on defendant's said lot 9, and, such lien being
discharged by the new satisfaction, there was sufficient consideration for
the new note given by M., the defendant, and sued upon in this action.

From an order of the district court for Hennepin county, Lan-
caster, J., denying a motion for a new trial, defendant appealed.
Affirmed.

*Penney & McMillan,* for appellant.

*Jayne & Morrison, Robert G. Morrison* and *Flannery & Cooke,* for
respondent.

The note in suit was given in payment of a then existing debt and

therefore has a sufficient consideration. Holm v. Sandberg, 32 Minn. 427; Close v. Hodges, 44 Minn. 204; D. M. Osborne & Co. v. Doherty, 38 Minn. 430; 1 Daniel, Neg. Inst. § 186. Further, the note being given for that which in equity and good conscience the defendant ought to pay, its payment will be enforced. 9 Am. & Eng. Enc. 878; Clarke v. Dutcher, 9 Cow. 674; Langevin v. City of St. Paul, 49 Minn. 189; Pensacola v. Braxton, 34 Fla. 471; Kerr, F. & M. 436. Equity will consider an incumbrance as in force if the ends of justice can be thereby attained. Lowrey v. Byers, 80 Ind. 443; Hanlon v. Doherty, 109 Ind. 37. Mistake may not only be expressly established, but it will be inferred from circumstances and from the nature of the transaction. Geib v. Reynolds, 35 Minn. 331.

Where the mortgagee takes a conveyance of a part of the mortgaged premises, the mortgage is satisfied as to that part and the debt is extinguished pro tanto and no more. Wilhelmi v. Leonard, 13 Iowa, 330; James v. Morey, 2 Cow. 246; Drury v. Holden, 121 Ill. 130; 1 Pingrey, Mort. § 1061; Mann v. Mann, 49 Ill. App. 472; Sahler v. Signer, 44 Barb. 606; Trimmer v. Vise, 17 So. C. 499; Ehrman v. Alabama, 109 Ala. 478. See also Knickerbacker v. Boutwell, 2 Sand. Ch. 352; Casey v. Buttolph, 12 Barb. 637; 15 Am. & Eng. Enc. 330. A release, like any other contract, may be shown to lack the essential element of consideration. Hanlon v. Doherty, supra; 1 Jones, Mort. § 773.

BUCK, J.

This action was brought to recover on a promissory note for the sum of $1,135 made by the defendant, Morse, payable to the order of Charles G. Morrison, and indorsed by him to the plaintiff herein, Robert G. Morrison. In his answer the defendant, Morse, alleges a want of consideration for the note. On the trial the court directed the jury to find a verdict in favor of the plaintiff for the sum of $1,375.33.

The record shows that on August 5, 1886, the payee in said note owned lots 8 to 13, inclusive, in block one of Charles G. Morrison's addition to Minneapolis, and on that day the payee (Charles G. Morrison) and his wife conveyed all of these lots to one Ezra P. Chit-

tenden, who executed to Charles G. Morrison a note for the purchase money, in the sum of $5,950, and a mortgage of the same amount upon these lots, and therein each of said lots was charged with the payment of its proportionate share of the whole amount,— such share amounting to $979.66 on each lot, and interest thereon; and the parties agreed that each lot should be released from the lien of the mortgage on payment of said sum of $979.66 and interest.

On March 21, 1887, Chittenden conveyed lot 9 of said lots to one Woodbury, and Woodbury conveyed the same to one Lucy H. Duncan, and on October 17, 1887, she conveyed the same lot to the defendant, Morse. Each grantor conveyed said lot subject to the mortgage lien thereon of $979.66. On May 23, 1886, Chittenden reconveyed to Charles G. Morrison all of said lots, except said lot 9.

On February 6, 1889, Charles G. Morrison executed a certificate of satisfaction of the entire mortgage, covering all of said lots and property described in said mortgage, and in said certificate stated that said note and mortgage had been paid. Who filed the satisfaction for record, does not appear. At the time it was executed the defendant, Morse, was still the owner of said lot 9, and did not actually know of the execution of the satisfaction, or of its recording, and had not paid his proportionate share of $979.66, which by the various conveyances was a charge and lien upon his said lot 9 for said sum, and which he never at any time paid; and he well knew that it was stipulated in the mortgage that by the payment of said proportionate amount of $979.66 his lot 9 would be released from the lien of the mortgage. Upon no other condition does it appear that the lien of the mortgage on his said lot was to be discharged.

As Chittenden was unable to make any payments on the mortgage which he had given for the purchase money, he made arrangements with Charles G. Morrison whereby, to avoid the expense of foreclosure, the latter consented to have Chittenden redeed the property as payment of said mortgage, except upon lot 9, but the $979.66 mortgage was not to be considered as paid by such redeeding; and said Morrison never received payment of said $979.66 by virtue of said redeeding of the Morse lot (No. 9), although, in form,

the said satisfaction so stated. If Morse had been affected by reason of this knowledge of the contents of this satisfaction, and had acted accordingly, possibly Morrison would have been bound by the contents of the instrument which he signed; but Morse is making no such claim, and his acts were in no way affected by the contents of the satisfaction. And the mortgagee's (Morrison's) uncontradicted testimony shows that he did not in fact know, when Morse gave him the note in controversy, that the mortgage on lot 9 had been released.

Just why lot 9 was not excepted from such release of the mortgage does not very satisfactorily appear, although it is fairly inferable from the whole record that it was a mistake or oversight on the part of Morrison. But Morse makes no claim, in his testimony, that he was misled, or deceived by the satisfaction on record, or that he signed the note on the strength of any such instrument having been executed. And Morrison did not knowingly deceive or mislead Morse, as he supposed the mortgage lien of $979.66 was still unsatisfied of record. With this existing condition of affairs on the part of each, Morrison, apparently in good faith, stated to Morse that the mortgage on lot 9 would have to be paid, unless something was done about it, and that he owned the mortgage. Morse testified about the matter as follows:

"We finally, after more or less talk about it, agreed that I would give my personal note, in the sum of $1,135, payable on or before five years, at 7 per cent., and secured by a new mortgage on this lot nine, and in consideration of that he would release the old mortgage; and in pursuance of that I executed this note, made out a satisfaction of the mortgage of $979.66, and a new mortgage for $1,135 on this lot."

Now, there cannot be any reasonable doubt but that in equity the lien of the first mortgage still existed on lot 9; for $979.66 of the mortgage had not been paid, and the release was made and filed through mistake or oversight. Chittenden did not claim that it was paid, and did not ask for a satisfaction, but, on the contrary, expressly agreed with Morrison that the redeeding of the five lots should be made to Morrison as payment of the mortgage, except that it should not operate to pay the $979.66 due on lot 9.

75 M.—9

Here was an express agreement that the satisfaction should not include the lien on lot 9, that it should not be deemed paid, and that it was not then paid; and certainly in equity, if not in law, it remained a lien upon said lot, as stipulated in the mortgage.   Even if Chittenden had paid it to Morrison, he would have been subrogated to the rights of Morrison in said lien, and could have enforced it against the lot, if Morse did not pay it, because Morse purchased the lot subject to it, and had not paid it, which lien Morrison had never released in favor of Morse.

It is true that Morse had never entered into a personal obligation to pay this incumbrance to any one, but he purchased the lot subject to this incumbrance; and, unless it was paid, it would be subject to the foreclosure of the mortgage therein, and his title to the lot lost, unless in some way he removed the lien of the mortgage. Now, by giving the new note to Morrison, and getting him to give a new satisfaction he was released from the liability of the mortgage lien, or losing his lot by foreclosure.   Morrison, by giving the new satisfaction, parted with all his right and interest in the mortgage lien on lot 9, and Morse thereby held it free from such lien.

These facts show ample consideration for the note in controversy. Morse parted with no previous consideration in discharging the mortgage lien upon his lot, and, in giving the note herein sued upon, he merely did his duty towards paying an equitable, if not a legal, obligation, which he preferred to do rather than lose the lot incumbered by the lien; and why should he complain?

Upon this note, dated May 1, 1889, he paid annual interest up to the year 1895, amounting to more than $400, and only seeks to avoid payment, not because he or anybody else ever paid the note, but because the record merely shows a release of the entire mortgage.   There is no equity in his defense, and the law does not uphold it.

Order affirmed.

MITCHELL, J.

I concur.   The only question in the case is whether the evidence of a consideration for the note sued on was conclusive.

Defendant's lot became the primary fund for the payment of the

$979.66, which by the terms of plaintiff's mortgage was made a specific lien upon it.   It stands admitted that defendant never paid it. If it has ever been paid, it was by Chittenden by the reconveyance to plaintiff of the other lots.   If Chittenden did not pay it, then plaintiff still had a mortgage lien on defendant's lot.   If he did pay it, then, under the doctrine of equitable subrogation, he became entitled to resort to the lot for reimbursement.   In other words, upon the undisputed facts, either plaintiff or Chittenden had a claim on the lot for the payment of the $979.66.

As against a mere admission of plaintiff in the satisfaction piece that the whole mortgage had been paid, there is the positive testimony of both plaintiff and Chittenden that the reconveyance by the latter to the former was in payment and satisfaction only of that part of the mortgage indebtedness secured on the lots reconveyed. The testimony of Chittenden, who must have had a claim on the lot, if plaintiff had not, practically amounted to a formal disclaimer.

Upon this state of the evidence the court was justified in directing a verdict.

CANTY, J.

I concur with Justice MITCHELL.